**LORELEI CORPORATION,**
Plaintiff, Appellant,

v.

**COUNTY OF GUADALUPE, et al.,**
Defendants, Appellees.

No. 91–1259.

United States Court of Appeals,
First Circuit.

Submitted July 11, 1991.

Decided July 25, 1991.

Bruce S. Billings on brief, Limestone, Me., for plaintiff, appellant.

Charles D. Houlihan, Jr., William H. Robinson, Matthews & Branscomb, John R. Locke, Jr., Groce, Locke & Hebdon, San Antonio, Tex., John F. Barnicle and Moncure & Barnicle on brief, Brunswick, Me., for defendants, appellees.

Before CAMPBELL and SELYA, Circuit Judges, and BOWNES, Senior Circuit Judge.

PER CURIAM.

The appellant, Lorelei Corporation, is incorporated in Maine and has its principal place of business there. This lawsuit, however, concerns a parcel of real estate, located in Guadalupe County, Texas, which Lor-

elei claims it owns. In 1985, Guadalupe County purchased the property at a foreclosure sale conducted to satisfy a lien held by the Small Business Administration. The county then built a new jail on the site. In 1990 the Court of Appeals for the Fifth Circuit determined (1) that the Small Business Administration's lien was extinguished in 1982, when a prior lien holder foreclosed on its interest, (2) that the foreclosure sale at which the county purchased the property was void, and (3) that Lorelei—which had acquired the property from the prior lien holder—therefore held title to the land. *See generally United States v. Vahlco Corp.*, 895 F.2d 1070 (5th Cir.1990).

The Fifth Circuit remanded the matter to the federal district court for the Western District of Texas with instructions to refund the proceeds of the auction sale to the county, and with directions to the county and Lorelei to work out an arrangement for possession of the property and payment for the value of the improvements the county had made. *Id.* at 1073. Negotiations between Lorelei and the county, however, did not bear fruit, and Lorelei commenced this suit in the federal district court for the District of Maine against (1) Guadalupe County, (2) the Guadalupe County Judge (who presides over an elected body known as the Commissioner's Court), and (3) six present and former members of the Commissioner's Court. The complaint asked the district court to order the county to vacate the property, and to award several million dollars in damages to Lorelei.

The defendants moved to dismiss, arguing lack of personal jurisdiction, insufficient service of process, and improper venue. They submitted affidavits from each of the individual defendants, attesting to their complete lack of personal or business contacts with the state of Maine. Lorelei did not attempt to rebut the defense's factual showing, but relied instead on the argument that the defendants had waived their jurisdictional objections when they appeared before the district court for the purpose of requesting an extension of time

in which to respond to the complaint. After the parties had fully briefed their positions, the district court granted the motion to dismiss on all three asserted grounds. This appeal followed. We affirm.

I

In its complaint, Lorelei stated that the district court had jurisdiction over the subject-matter of the dispute on the basis of both diversity of citizenship, 28 U.S.C. § 1332, and the existence of a federal question, 28 U.S.C. § 1343. When the district court's *subject-matter* jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's *personal* jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment. The physical scope of the court's constitutional power is broad. It is clear that the fifth amendment "permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole," *Whistler Corp. v. Solar Electronics, Inc.*, 684 F.Supp. 1126, 1128 (D.Mass.1988), citing *Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co.*, 743 F.2d 956, 959 (1st Cir.1984), and that sufficient contacts exist whenever the defendant is served within the sovereign territory of the United States. *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 n. 3 (1st Cir.1984); *Driver v. Helms*, 577 F.2d 147, 156 n. 25 (1st Cir. 1978).

Although there is no direct constitutional check on the district court's exercise of personal jurisdiction over a United States resident in a federal question case, there is a statutory limitation. The boundaries of the various federal judicial districts are either congruent with or contained within the borders of the several states, and Fed.R. Civ.P. 4(f) states the general rule that service of process issued by federal courts must be confined to "the territorial limits of the state in which the district court is held." [1] Fed.R.Civ.P. 4(e) authorizes extra-

---

**1.** Though personal jurisdiction and service of process are distinguishable, they are closely re-

territorial service, but only in two prescribed circumstances. The first is where a United States statute provides for such service, as in the number of laws that allow nationwide service of process in suits stating particular causes of action. *See* 2 Moore's Federal Practice ¶ 4.42[2.–1] (1991) (listing statutes). 28 U.S.C. § 1343, the statute that purportedly creates federal question jurisdiction in this case, does not provide for nationwide service.

■ If no federal statute exists, then Rule 4(e) allows extraterritorial service of process only to the extent permitted by the law of the state in which the district court sits. Since the "state statutes referred to cannot provide for service of process on a defendant outside the respective states unless the defendant has had the contact with that state that is required by the fourteenth amendment," *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d at 950, Rule 4(e) actually prescribes a two-step analysis. First, the federal court must determine whether the state's "long arm" or "doing business" statute authorizes it to exercise personal jurisdiction over the foreign defendant. If it does, the court must then determine whether the exercise of personal jurisdiction under the circumstances is consistent with due process under the fourteenth amendment. *See, e.g., Whistler Corp. v. Solar Electronics, Inc.,* 684 F.Supp. at 1129–31. Thus, even though the familiar fourteenth amendment "minimum contacts" doctrine exerts no direct restraint on the federal courts in federal question cases, under the existing statutory framework the minimum contacts analysis acts indirectly "as a precondition to the exercise of personal jurisdiction...." *Catrone v. Ogden Suffolk Downs, Inc.,* 647 F.Supp. 850, 855 (D.Mass.

1986), citing *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d at 950.

## II

On appeal Lorelei has prudently abandoned its contention that the defendants waived their jurisdictional objections when they asked the district court for additional time in which to respond to the complaint. *See* Fed.R.Civ.P. 12(h)(1).[2] Instead, Lorelei argues that personal jurisdiction was created by the Maine long arm statute, 14 M.R.S.A. § 704–A. The statute enumerates several specific instances in which a defendant's contacts with the state may subject him to long arm jurisdiction, including two cited by Lorelei: (1) "[t]he transaction of any business within this State," 14 M.R.S.A. § 704–A(2)(A), and (2) "[d]oing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State." 14 M.R.S.A. § 704–A(2)(B).

■ The Maine long arm statute is subject to a general limitation in that "[o]nly causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section." 14 M.R.S.A. § 704–A(4). In other words, the long arm statute provides only for the exercise of "specific" jurisdiction; that is, jurisdiction which is asserted when the lawsuit "arises directly out of [the defendant's] forum-based activities". *Donatelli v. National Hockey League,* 893 F.2d 459, 462 (1st Cir.1990).[3]

■ Lorelei's theory is that when Guadalupe County took possession of and then refused to return the property at issue, it committed a tortious act (presumably, trespass upon the real property and conversion of certain items of personal property), the

lated since "service of process is the vehicle by which the court may obtain jurisdiction." *Driver v. Helms,* 577 F.2d at 155, quoting *Aro Manufacturing Co. v. Automobile Body Research Corp.,* 352 F.2d 400, 402 (1st Cir.1965).

2. The rule states: "A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived ... (B) if it is neither made by

motion under [Rule 12(b)] nor included in a responsive pleading or an amendment thereof...."

3. "General" personal jurisdiction is "jurisdiction which may be asserted in connection with suits not directly founded on forum-based conduct." *Donatelli v. National Hockey League,* 893 F.2d at 462–63.

consequences of which were felt in Maine by Lorelei. Since Lorelei's present cause of action arose out of this alleged tort, the theory goes, the district court had the power to exercise specific personal jurisdiction over the defendants.

Under Maine law, however, "[t]he commission outside the forum state of an act that has consequences in the forum state is by itself an insufficient contact where all the events necessary to give rise to the tort claim occurred outside the forum state." *Martin v. Deschenes,* 468 A.2d 618, 619 (Me.1983). Here, none of the events necessary to give rise to a tort claim for conversion or trespass occurred in Maine; rather, all relevant events took place in Texas, where the county both acquired the property and refused to relinquish it. Maine law, therefore, did not authorize service of process on the defendants or create personal jurisdiction over them.

### III

■ Not only is Lorelei's position incorrect as a matter of statutory application; it is constitutionally indefensible. Due process requires that a foreign defendant "purposefully avail himself of the privileges and protection of state law," such that he can reasonably anticipate being haled into court there, before the forum state may assert personal jurisdiction over him. *Keds Corp. v. Renee International Trading Corp.,* 888 F.2d 215, 218 (1st Cir.1989). *See also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283

(1958). The defendants here took no such deliberate step. They were a Texas county, and seven of its officers, which bought a parcel of property located in Texas at a sale held in that state. The *only* connection between Maine and this litigation is Lorelei, but in the personal jurisdiction context "the focus is on the interests and activity of the defendant," *Hahn v. Vermont Law School,* 698 F.2d 48, 51 (1st Cir.1983), not the plaintiff. The record, moreover, positively discloses that the defendants transacted no business with Lorelei that might have indirectly put them in "contact" with Maine. The auction sale at which the county bought the property was conducted by the local sheriff to satisfy a lien held by a federal agency: the county did not negotiate with Lorelei, did not pay Lorelei, and did not take title from Lorelei. Consequently, there were no relevant contacts at all between the defendants and Maine, and no possible basis for the exercise of personal jurisdiction.[4]

### IV

■ The foregoing should make it abundantly clear that the district court lacked the power either to issue process that could validly be served on the defendants in Texas, or to exercise personal jurisdiction over them in Maine. Indeed, Lorelei's challenge to the district court's decision was so devoid of factual or legal support as to be frivolous within the meaning of Fed.R. App.P. 38.

4. Lorelei has included in its appendix several documents which, it claims, demonstrate that Guadalupe County "has had a long and continued history of contact with Lorelei." These documents were not presented to the district court and therefore are not properly part of the appellate record. *See* Fed.R.App.P. 10(a) (original papers and exhibits filed in district court, transcript of proceedings, and certified copy of docket constitute the record on appeal in all cases). *See also In re Capital Cities/ABC's Application for Access to Sealed Transcripts,* 913 F.2d 89, 96 (3d Cir.1990) (court will not consider material on appeal that is outside of the district court record); *United States v. Kobrosky,* 711 F.2d 449, 457 (1st Cir.1983) ("evidentiary matters not first presented to the district court are ... not properly before [the court of appeals]"). In any event, the documentary submission consists only of several delinquent tax notices that the county sent to Lorelei *prior* to the county's purchase of the property, and a check to cover the bill of costs assessed against the county under Fed.R.App.P. 39 as a result of the Fifth Circuit appeal. The exhibits do not demonstrate that the defendants had any purposeful contacts with Lorelei in Maine (1) that were relevant to the events that gave rise to this action, or (2) that were "systematic and continuous" enough to establish a basis for the exercise of "general" personal jurisdiction under the Maine "doing business" statute, 13–A M.R.S.A. § 1213(1). *See Labbe v. Nissen Corp.,* 404 A.2d 564, 568 (Me.1979) (when plaintiff's claim does not arise out of something done in forum state, defendant's contacts with state must be "fairly extensive").

The judgment of dismissal is *affirmed.* *Double costs to the appellees.*