HRP Products v. Ed Tucker Distrib.    CV-95-290-SD  04/08/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


H.R.P. Products, Inc.


    v.                                       Civil No. 95-290-SD


Ed Tucker Distributor, Inc.,
 d/b/a Tucker-Rocky Distributing



O R D E R


    In this civil action, plaintiff H.R.P. Products, Inc.,

asserts claims under both federal and state law against defendant

Ed Tucker Distributor, Inc., d/b/a Tucker-Rocky Distributing, for

trademark and copyright infringement, false designation of

origin, unfair business practices, passing off, and injury to

business reputation.

    Presently before the court are defendant's motions to

dismiss for (1) lack of personal jurisdiction and (2) improper

venue.  Plaintiff has timely objected to both motions, and

defendant has filed a reply memorandum in support of its personal

jurisdiction argument.[1]

_____

    [1]The court notes that a complaint for patent infringement
was filed by Tucker-Rocky and another against H.R.P. in the
United States District Court for the Northern District of Texas
forty-five days after H.R.P.'s complaint was filed in this

H.R.P. Products, Inc., is a corporation organized and existing under the laws of the state of New Hampshire with its principal place of business located in Somersworth, New Hampshire.  H.R.P. "is in the business of designing, making and selling various types of sports equipment including plastic chest protectors for use by motorcyclists."  Amended Complaint ¶ 5.

Tucker-Rocky Distributing is a corporation existing under the laws of the state of Texas with its principal place of business located in Irving, Texas.  "Tucker-Rocky is an importer and distributor of motorcycle related parts and accessories to retailers."  Affidavit of Robert A. Nickell ¶ 3 (attached to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction as Exhibit A).

Plaintiff asserts that

> [s]ince 1989 Plaintiff has been selling its chest protectors to Defendant for resale to others including independent retailers.  Plaintiff's chest protectors, when marketed by Defendant, are marked with Plaintiff's various trademarks including Plaintiff's "AIR SYSTEM" trademark.  In addition, Defendant places its own trademark or trademarks on Plaintiff's products, including the mark "HP RACING".

Amended Complaint ¶ 10.  However,

---

matter.  Similar motions, asserting personal jurisdiction and venue defects, are currently pending in the Texas litigation before Judge Solis.

> [e]arly in 1995, Defendant began purchasing from a
> third party clear plastic chest protectors that
> are identical in appearance to Plaintiff's clear
> plastic chest protectors and selling said chest
> protectors to others under the same trademarks as
> those used in connection with Plaintiff's chest
> protectors, i.e. including Plaintiff's "AIR
> SYSTEM" trademark and with hang tags that are
> essentially identical to Plaintiff's hang tags.[2]
> . . . As a result, a purchaser of a clear plastic
> chest protector from Defendant or one of
> Defendant's customers will receive either
> Plaintiff's product or product manufactured by a
> third party depending upon what size is ordered,
> yet the product received will be marked and tagged
> identically as compared to other sizes of the same
> product.

Id. ¶ 11.

Following a series of correspondence between the parties, and respective counsel, this action ensued, with the Texas litigation closely on its heels.

## Discussion

1. Personal Jurisdiction Standard

"Personal jurisdiction implicates the power of a court over a defendant." Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 143 (1st Cir. 1995). "In a federal court, both its source and its outer limits are defined exclusively by the Constitution." Id.

---

[2]Defendant allegedly purchases from this third party "only large size clear chest protectors and continues to purchase all other sizes from Plaintiff." Amended Complaint ¶ 11.

3

"When a court's jurisdiction is contested, the plaintiff bears the burden of proving that jurisdiction lies in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). Where, as here, there has been no evidentiary hearing, a plaintiff is only required to make a prima facie showing of personal jurisdiction, submitting "evidence that, if credited, is enough to support findings of all facts," Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), "required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution,'" id. (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990)). This "prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record." Id. (citing Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 9 (1st Cir. 1986)).

When reviewing the record before it, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Kopf v. Chloride Power Elecs., Inc., 882 F. Supp. 1183, 1192 (D.N.H. 1995) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)) (quotation marks and citation omitted). The court will, however,

4

construe plaintiff's written allegations of jurisdictional facts in her favor.  Id. (citing Kowalski, supra, 787 F.2d at 9) (citation omitted).

"[T]he extent of the required jurisdictional showing by a plaintiff depends upon whether the litigant is asserting jurisdiction over a defendant under a theory of 'general' or 'specific' jurisdiction."  Sawtelle, supra, 70 F.3d at 1387 n.3 (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 n.3 (1st Cir. 1994)).[3]  Specific jurisdiction turns on a "plaintiff's ability to satisfy two cornerstone conditions:  'first, that the forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the constitution.'" Foster-Miller, supra, 46 F.3d at 144 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994), cert. denied sub nom., Yari v. Pritzker, ___ U.S. ___, 115 S. Ct. 1959 (1995)).

---

[3]The court elects to narrow "the lens of judicial inquiry . . . to focus on specific jurisdiction," Foster-Miller, supra, 46 F.3d at 144, due to the allegations of forum-based infringement contained in the amended complaint, while at the same time noting that general personal jurisdiction is ordinarily invoked "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state," id. (citing United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

5

## 2. Application of the Principles

### a. New Hampshire Long-Arm Statute

The court's jurisdiction over this controversy arises in the context of both the diverse citizenship of the parties and the federal questions asserted herein. As distinguished from personal jurisdiction in the context of diversity jurisdiction, which is controlled by the Due Process Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment controls when a court's jurisdiction is founded upon a federal question. United Elec. Workers, supra note 2, 960 F.2d at 1085 (citing 28 U.S.C. § 1332; Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991)) (other citation omitted).

Regardless of the controlling Amendment, the basis for service of process to a particular court must "be grounded within a federal statute or Civil Rule," as "process constitutes the vehicle by which the court obtains jurisdiction." Id. (citing Lorelei, supra, 940 F.2d at 719 n.1) (other citations omitted). Absent federal authorization for service, the court must turn to state law for authority to exercise jurisdiction over an out-of-state corporation. See Rules 4(e) and 4(k)(1), Fed. R. Civ. P.; Akro Corp. v. Luker, 45 F.3d 1541, 1544 (Fed. Cir.) (when federal statute does not provide for service of process, court must look to forum state's long-arm statute), cert. denied sub nom., Luker v. Akro Corp., ___ U.S. ___, 115 S. Ct. 2277 (1995).

6

Recent caselaw has confirmed this court's previous determination that New Hampshire Revised Statutes Annotated (RSA) 293-A:15.10 is the New Hampshire long-arm statute governing unregistered foreign corporations. Sawtelle, supra, 70 F.3d at 1388 (citing McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994)).[4] RSA 293-A:15.10 "includes no restriction upon the scope of jurisdiction available under state law and thus authorizes jurisdiction over such entities to the full extent permitted by the federal Constitution." Id. Accordingly, "the two-part personal jurisdiction inquiry collapses into the

_____

[4]Under RSA 293-A:15.10,

> (b) A foreign corporation may be served by registered or certified mail, return receipt requested, addressed to the secretary of the foreign corporation at its principal office shown in its application for a certificate of authority or in its most recent annual report if the foreign corporation:
> (1) has no registered agent or its registered agent cannot with reasonable diligence be served;
> (2) has withdrawn from transacting business in this state under RSA 293-A:15.20; or
> (3) has had its certificate of authority revoked under RSA 293-A:15.31.
> . . . .
> (d) This section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation.

RSA 293-A:15.10(b), (d) (Supp. 1994).

7

single question of whether the constitutional requirements of due process have been met."  Id.


b.  Constitutional Due Process Requirements

A court may exert specific jurisdiction when a plaintiff shows that "minimum contacts" exist between the defendant and the forum state.  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The First Circuit has found that the minimum contacts analysis "implicates three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness."  Foster-Miller, supra, 46 F.3d at 144 (citing United Elec. Workers, supra note 2, 960 F.2d at 1089); accord Ticketmaster, supra, 26 F.3d at 206.

As to "relatedness", the court's first consideration is whether plaintiff's claims arise out of, or relate to, defendant's New Hampshire activities.  See Ticketmaster, supra, 26 F.3d at 206.  This "requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action."  Id.  "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state."  Sawtelle, supra, 70 F.3d at 1389 (emphasis added)

8

(citing <u>Fournier v. Best Western Treasure Island Resort</u>, 962 F.2d 126, 127 (1st Cir. 1992)). That being noted, "the relatedness test is, relatively speaking, a flexible, relaxed standard," <u>Pritzker</u>, <u>supra</u>, 42 F.2d at 61, which "authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed," <u>Ticketmaster</u>, <u>supra</u>, 26 F.3d at 207.

This litigation is founded upon, inter alia, defendant's alleged instances of trademark and copyright infringement. As one source on such subject has noted, "the tort [of trademark infringement] is deemed to occur not only where the infringing product is made, but where the confusion of purchasers occurs." 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32.14[1], at 32-49 n.9 (3d ed. 1995). Since the accused product has been offered for sale in New Hampshire, <u>see</u> Declaration of Diane L. Monahan ¶ 4 (attached to Plaintiff's Objection);[5] Hooksett Kawasaki-Polaris, Inc. invoice 004902 (attached as Exhibit C to Monahan Declaration), the court finds and rules that a sufficient nexus exists between plaintiff's cause of action and defendant's forum-based contacts.

---

[5]The court notes that the Monahan Declaration fully complies with 28 U.S.C. § 1746, and as such is given "like force and effect" by the court as would a sworn affidavit.

Insofar as "[t]he function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state," Sawtelle, supra, 70 F.3d at 1391 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)), "the cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability," id. (citing Ticketmaster, supra, 26 F.3d at 207). As such, the jurisdictional inquiry is not merely an arithmetic endeavor, but rather one of weight and merit. Pritzker, supra, 42 F.3d at 61.

The Supreme Court has declared that an out-of-state defendant should be "forewarned" that he could be subject to suit in a forum state "if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from the alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citing Keeton, supra, 465 U.S. at 774; Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

"[K]nowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to

10

defend [its] actions" Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989) (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)), cert. denied sub nom., McNell v. Hugel, 494 U.S. 1079 (1990). Moreover, "'[d]amage to intellectual property rights (infringement of a patent, trademark or copyright) by definition takes place where the owner suffers the damage.'" Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1388 (8th Cir. 1991) (quoting Acrison, Inc. v. Control & Metering Ltd., 730 F. Supp. 1445, 1448 (N.D. Ill. 1990)) (emphasis in Acrison).

As previously indicated, plaintiff and defendant maintained a commercial relationship from at least 1989 through early 1995, see Amended Complaint ¶¶ 10-11, thus plaintiff's choice of forum for the institution of this civil action, the state of its principal place of business, should hardly constitute "unfair surprise" to Tucker-Rocky. Moreover, that defendant marketed a product in the forum bearing marks that allegedly infringe upon certain trademarks and copyrights held by plaintiff is no doubt a contact exhibiting sufficient "purposeful availment" of the forum so as to render said contact jurisdictionally meaningful.

In spite of plaintiff's adequate demonstration as to both the "relatedness" and "purposeful availment" prongs of the jurisdictional construct, the court will finally examine if its jurisdiction over defendant comports with the notions of "fair

11

play and substantial justice" that have come to define what is, jurisdictionally speaking, "reasonable".

The First Circuit has assessed "that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster, supra, 26 F.3d at 210. The Supreme Court has identified five considerations, termed the "gestalt factors", that courts must consider when considering the fairness of subjecting nonresidents to the authority of a foreign tribunal:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Sawtelle, supra, 70 F.3d at 1394 (citing Burger King Corp., supra, 471 U.S. at 477).

Recognizing that "defending in a foreign jurisdiction almost always presents some measure of inconvenience," id. at 1395 (citing Pritzker, supra, 42 F.3d at 64), the First Circuit has determined that "this factor becomes meaningful only where a party can demonstrate 'a special or unusual burden.'" Id. Defendant has not claimed or demonstrated any such burden.

12

"A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp., supra, 471 U.S. at 473 (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)) (other citation omitted). Further, plaintiff's residence is not "completely irrelevant to the jurisdictional inquiry." Keeton, supra, 465 U.S. at 780. "[P]laintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." Id. Thus, this factor weighs mightily in plaintiff's favor.

The court "must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Ticketmaster, supra, 26 F.3d at 211 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)). Thus, the court finds that plaintiff's interest in obtaining convenient relief in its home state weighs in favor of exercising jurisdiction.

The court next evaluates the judicial system's interest in obtaining the most effective resolution of the controversy. "[T]he judicial system's interest in obtaining the most efficacious resolution of the controversy . . . counsels against bifurcation of the dispute among several different jurisdictions." Pritzker, supra, 42 F.3d at 64. Plaintiff

13

brought this action against the defendant in June 1995.
Defendant, some six weeks later, brought a patent infringement
action against H.R.P. in its "home" state of Texas.  The pendency
of similar jurisdiction/ venue motions in the Texas litigation
has the limited effect, if any, of neutralizing this factor such
that it favors neither party.

The final "gestalt" factor requires the court to "consider
the common interests of all sovereigns in promoting substantive
social policies." Sawtelle, supra, 70 F.3d at 1395.  The
infringement of trademarks, copyrights, and other indicia of
intellectual property, regardless of whether the actor is
geographically located within or without the forum, is said to
constitute "a tortious act within the state when injury occurs in
New Hampshire . . . ." VDI Technologies v. Price, 781 F. Supp.
85, 89 (D.N.H. 1991).  H.R.P., as holder of the marks at issue
and a New Hampshire domiciliary, has, at this juncture, satisfied
the court that it has suffered injury in New Hampshire.  See
Concord Labs, Inc. v. Ballard Medical Prods., 701 F. Supp. 272,
275 (D.N.H. 1988).  New Hampshire's "significant interest in
affording injured New Hampshire plaintiffs a forum in which to
litigate the question of liability for their injuries," Phelps v.
Kingston, 130 N.H. 166, 175, 536 A.2d 740, 745 (1987), in the
view of the court, outweighs any interest Texas may have in

14

policing corporations organized and operating under its laws. Thus, New Hampshire's substantive social policy of injury compensation trumps Texas's policy of promoting sound competition among corporations, and the final gestalt factor tips in plaintiff's direction.

Plaintiff, having demonstrated that (1) a relatedness between defendant's contacts with New Hampshire and its cause of action presently exists; (2) defendant has purposefully availed itself of the benefits and protections afforded by this state; and (3) consideration of the gestalt factors does not contradict the determination of the foregoing, has sustained its burden in opposing defendant's motion. E.g., Keeton, supra, 465 U.S. at 780 (in order to exercise in personam jurisdiction over an out-of-state defendant, there must exist a logical nexus between "the defendant, the forum, and the litigation"). Accordingly, such motion must be and it is herewith denied.[6]

---

[6]The court similarly finds no merit in defendant's alternative motion (document 9) to transfer this matter to Judge Solis in the Northern District of Texas. Such action would merely serve the impermissible purpose of shifting the inconvenience from Tucker-Rocky to H.R.P., without bestowing any palpable benefit on the administration of justice. Such motion is accordingly denied.

<u>Conclusion</u>

For the reasons set forth herein, defendant's motion to dismiss for lack of personal jurisdiction (document 10) and motion to dismiss for improper venue (document 9) are each herewith denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

April 8, 1996

cc:   Teresa C. Tucker, Esq.
      George R. Moore, Esq.
      Paul S. Leslie, Esq.