**Alfred PIKE, Plaintiff**

v.

**CLINTON FISHPACKING, INC., Good Shepard Fisheries Inc., Robert T. Cabral, F/V Provider Official No.: 599943, Provider, Inc. and F/V Provider Official No.: 290638, Defendants.**

**Civil Action No. 00–10179–RCL.**

United States District Court,
D. Massachusetts.

May 31, 2001.

___

John P. LeGrand, John P. LeGrand & Associates, P.C., Somerville, MA, for plaintiff.

Keith B. Kyle, Law Office of Keith B. Kyle, Stephen T. Morrissey, Law Office of Stephen T. Morrissey, Wakefield, RI, for defendants Good Shepherd Fishers, Inc., Robert T. Cabral F/V Provider, Official.

William Hewig, III, Kopelman & Paige, P.C., Boston, for defendants Provider, Inc. and F/V Provider.

## MEMORANDUM ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

LINDSAY, District Judge.

The Defendants, Provider, Inc. and F/V Provider (Official No. 290638) (collectively, "defendants"), have moved this court, pursuant to Fed.R.Civ.P. 12(b), to dismiss the plaintiff's complaint for lack of personal jurisdiction, insufficient service of process, and improper venue. (Docket No. 31). In addition, the plaintiff, Alfred Pike, has sought leave to serve additional requests for production of documents on the defendant Provider, Inc. (Docket No. 28). The defendants have moved for a protective order as to the discovery motion. (Docket No. 37). For the reasons stated on the record at the hearing of this matter on April 30, 2001, this court granted, without prejudice, the defendants' motion to dismiss for lack of personal jurisdiction, insufficient service of process, and improper venue. However, the court allowed the plaintiff until May 8, 2001 to submit any new filings on the matter of jurisdiction. On May 7, 2001, the plaintiff filed a Motion for Reconsideration and Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction with supporting affidavits. (Docket No. 49). For the reasons stated below, this court grants the plaintiff's motion for reconsideration and, upon recon-

sideration, now denies the defendants' motion to dismiss.

### Background

On January 31, 2000, the plaintiff filed his original complaint alleging that the defendants, Clinton Fish Packing, Inc. ("Clinton Fish Packing"), Good Shepard Fisheries, Inc. ("Good Shepard"), Robert Cabral, and F/V Provider, Official Number 599943 ("Provider 59943"), caused severe personal injuries to the plaintiff while he was fishing off the coast of Alaska. The plaintiff alleged eighteen counts in the original complaint, asserting claims under the Jones Act, 46 U.S.C.App. § 688, for negligence, and under the general maritime law for unseaworthiness and for maintenance and cure. On May 23, 2000, the plaintiff filed an amended complaint. The amended complaint alleges essentially the same claims (Counts 19–24) against two additional defendants: Provider Inc. and F/V Provider, Official Number 290683 ("F/V Provider"). On October 18, 2000, Provider, Inc. and F/V Provider filed a motion to .dismiss for lack of personal jurisdiction, insufficiency of service, and improper venue.

For the purpose of the defendants' motion to dismiss, the well-pleaded facts alleged in the complaint are deemed to be true and all reasonable inferences therefrom are viewed in the plaintiff's favor. *See TAG/ICIB Services, Inc. v. Pan American Grain Co., Inc.* 215 F.3d 172, 175 (1st Cir.2000). The facts as alleged in the complaint are brief. This action arises from injuries suffered by the plaintiff while on board the F/V Provider. The plaintiff is a resident of New Bedford. *See* Original Complaint ¶ 1. On or about August 12, 1999, the plaintiff was an employee of Clinton Fish Packing, working on the F/V Provider, which is owned by Provider, Inc. *Id.* ¶ 3. At the time relevant to the com-

plaint, the F/V Provider was twelve hours off the Alaskan coast in international navigable waters. *See* Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue ("Plaintiff's Opposition"). The plaintiff suffered severe and painful injuries while in the performance of his duties. *Id.* ¶ 4. Specifically, the plaintiff's hand was crushed and amputated. *See* Plaintiff's Opposition.

Aside from the well-pleaded facts of the complaint, the plaintiff has proffered affidavit and deposition testimony for the purpose of establishing the facts necessary for this court to determine whether it may exercise personal jurisdiction over the defendants. In sum, the plaintiff presents evidence that between 1982 and the time of the plaintiff's injury on August 12, 1999, the defendants purchased gear and supplies from Massachusetts, solicited employees in Massachusetts, including the plaintiff, and serviced their vessels in Massachusetts. The following facts are relevant to the defendants' motion. At the time of the plaintiff's injury, the captain of the F/V provider was Michael Andrews. *See* Deposition of Michael Andrews ("Andrews Dep.") p. 36. Between 1997 and 1999, Captain Andrews was charged with the duty of finding men to fish on the F/V Provider in Alaska when needed. *See* Andrews Dep. pgs. 76–77. To find and hire fishermen, Captain Andrews would call Roy Enicson at Eastern Fisheries in New Bedford, Massachusetts in an ongoing fashion. *See* Andrews Dep. p. 76. Indeed, a significant proportion of the men fishing aboard the F/V Provider were recruited from Massachusetts. In the plaintiff's case, he was told by the general manager of Eastern Fisheries in New Bedford, Steve Luzon, that the owner of the F/V Provider, Mark Kandianis, was recruiting fishermen to go to Alaska for the summer season. *See* Affidavit of Albert Pike

("Pike Aff.") ¶ 7. After speaking with Luzon, the plaintiff approached Roy Enicson of Eastern Fisheries who told the plaintiff that Kandianis had been "constantly calling me for crewmembers." Pike Aff. ¶ 9. Enicson gave the plaintiff Kandianis' telephone number. *See* Pike Aff. ¶ 11. The plaintiff contacted Kandianis in Washington based upon Enicson's statements that Kandianis was recruiting. *See* Pike Aff. ¶ 12. A letter of recommendation signed by Enicson was faxed to Kandianis that day. *See* Pike Aff. ¶ 14. The next day, the plaintiff received a call from Captain Andrews in Washington hiring the plaintiff. *See* Pike Aff. ¶ 15. Based upon the oral agreement, the plaintiff traveled to Alaska to meet the F/V Provider by June 16, 1998. *See* Pike Aff. ¶¶ 16–17.

*Discussion*

A. Personal Jurisdiction

It is well-established that it is the plaintiff who bears the burden of proving the facts upon which the existence of personal jurisdiction depends. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995). "The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *See Boit v. Gar-Tec Products, Inc.,* 967 F.2d 671, 676 (1st Cir.1992). This means that the plaintiff "must go beyond the pleadings and make affirmative proof." *Id.* at 675 (quoting *Chlebda v. H .E. Fortna & Bro., Inc.* 609 F.2d 1022, 1024 (1st Cir.1979)). However, "the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." *United Electrical Radio and Machine*

*Workers of America v. 163 Pleasant Street Corp.,* 987 F.2d 39, 44 (1st Cir.1993).

 Amenability to extra-territorial personal jurisdiction ultimately is a question of due process. In arguing whether this court has personal jurisdiction over the defendants consistent with due process, both parties analyze this problem in terms of a state's power to summon an out-of-state defendant with respect to the restraints of the due process standards under the Fourteenth Amendment. This case, however, is based on federal question jurisdiction. "When the district court's *subject-matter* jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the court's *personal* jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment." *Lorelei Corp. v. County of Guadalupe,* 940 F.2d 717, 719 (1st Cir.1991) (emphasis in original). In the First Circuit, it is well-established that the Fifth Amendment "permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole." *Id.* (quoting *Whistler Corp. v. Solar Electronics, Inc.,* 684 F.Supp. 1126, 1128 (D.Mass.1988) (citing cases)). *See United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1085 (1st Cir.1992) ("[T]he Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state"). In this case, it cannot be contested that the defendants have sufficient minimum contacts with the United States to satisfy this broad due process standard of the Fifth Amendment. The F/V Provider is a boat owned by Provider, Inc., a corporation organized under the laws of the State of Washington. *See, e.g., Trans–Asiatic Oil Ltd. v. Apex Oil Co.,* 743 F.2d 956, 959 (1st Cir.1984) ("Since [the defendant] is a United States corporation ... we need not decide to what degree a foreign admiralty defendant must have minimum contacts with the United States to be subject to quasi-in-rem jurisdiction"). The court's jurisdictional inquiry, however, does not end here.

 The next step is to determine whether the nationwide scope of personal jurisdiction in a federal question case is limited by Rule 4 of the Federal Rules of Civil Procedure. Before a federal court may exercise personal jurisdiction over a defendant in a federal question case, there must be authorization for service of summons on the defendant. *See Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). In the absence of a federal statute authorizing service of process, Rule 4(e) directs that service "may be effected in any judicial district of the United States: (1) pursuant to the law of the state in which the district court is located." Fed.R.Civ.P. 4(e); *see also, Omni,* 484 U.S. at 108, 108 S.Ct. 404. Here, there is no dispute that the Jones Act does not provide for nationwide service of process. *See Handley v. Indiana & Michigan Elec. Co.,* 732 F.2d 1265, 1270 (6th Cir.1984) ("The Jones Act does not contain a provision for service of process"). Thus, the court is obliged to look to the law of Massachusetts in determining whether the court may assert jurisdiction over the defendants. Herein lies the rub. In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute *and* its exercise does not offend the Due Process Clause of the Fourteenth Amendment. *See Tatro v. Manor Care, Inc.,* 416 Mass. 763, 772, 625 N.E.2d 549 (1994). Therefore, notwithstanding that

this is a federal question case, the Fourteenth Amendment "minimum contacts" analysis acts indirectly on the exercise of jurisdiction in this case because the Massachusetts law is subject to Fourteenth Amendment limitations.

The Massachusetts long-arm statute, M.G.L. c. 223A, § 3, made applicable by virtue of Fed.R.Civ.P. 4(e), establishes jurisdiction when the claim arises from the person's "(a) transacting any business in this commonwealth."[1] To establish jurisdiction under § 3(a), the plaintiff must proffer evidence tending to show two things: the defendant "transacted business" in Massachusetts, and the plaintiff's claim "arose from" the transaction of business by the defendant. *See Tatro*, 416 Mass. at 767, 625 N.E.2d 549.

■ As a general rule, the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy the "transacted business" requirement. *Id.* Indeed, the defendants do not dispute that the plaintiff has proffered evidence that the defendants have "transacted business" in Massachusetts in two distinct ways. First, the defendants concede that the hiring of the plaintiff, who is a Massachusetts resident, was itself a Massachusetts transaction. Second, the defendants admit that the plaintiffs have proffered evidence about the purchase by the defendants of fishing boat equipment and gear from several Massachusetts suppliers. Therefore, the thrust of the defendants' motion to dismiss is that the plaintiff has failed to proffer evidence that demonstrates that the plaintiff's claim "arises from" either of these transactions. Specifically, the defendants argue that the plaintiff's injuries did not arise from the defendants' transaction of business in

Massachusetts because the injury of which the plaintiff complained arose, not out of the contract of employment, but out of alleged negligence.

In *Tatro*, the Supreme Judicial Court ("SJC") rejected the notion that a tort claim cannot arise from a contractual transaction. *See id.* at 770, 625 N.E.2d 549 ("Logically, there is no reason why a tort cannot grow out of a contractual contact") (quoting *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n. 21 (5th Cir.1981)). There, the plaintiff claimed personal injuries as a result of a slip and fall in a bathtub in her hotel room in California. She alleged that the defendant was responsible for her injuries because it had violated a duty to provide her with a safe bathtub. The defendant, although having no place of business or agents in Massachusetts, did solicit business from Massachusetts corporations, including the plaintiff. The SJC held that "[b]ut for" the defendant's solicitation of business in Massachusetts, and its agreement to provide plaintiff with hotel accommodations in California, the plaintiff would not have been injured in a room of the hotel. Under the SJC's "but for" standard, jurisdiction was permitted because the plaintiff's reservation of a room is considered "the first step in a train of events that results in the personal injury." *See id.* at 770, 625 N.E.2d 549.

■ Here, there can be no doubt that the defendants' decision to contract with the plaintiff for employment was a similar "first step" in his alleged injury. Although the plaintiff "signed aboard" in Alaska, the defendants' decision to accept the plaintiff's employment formed part of an overall purposeful solicitation of employees from Massachusetts. It appears from the plain-

---

1. For purposes of the long-arm statute, a "person" includes "a corporation, partner-ship, association or any other legal or commercial entity." M.G.L. c. 223A, § 1.

tiff's proffer that, over the years, between 50% and 90% of the defendants' crew has been recruited from Massachusetts. The plaintiff was no exception. He was recruited by Eastern Fisheries in Massachusetts by request of the owner of the F/V Provider, Mark Kandianis. Roy Enicson of Eastern Fisheries told the plaintiff that Kandianis had been "constantly calling me for crewmembers." Pike Aff. ¶ 9. Based on Kandianis' efforts to secure fishermen through Roy Enicson, the plaintiff contracted with the defendants. It simply strains the literal requirements of the long-arm statute to suggest that a foreign corporation can continuously and substantially contract with Massachusetts residents for employment in Alaska and then seek to avoid personal jurisdiction in Massachusetts when those employees suffer injuries that arise from their employment. *See id.* at 771, 625 N.E.2d 549 ("We doubt that the Legislature intended to foreclose a resident of Massachusetts, injured in another State, from seeking relief in the courts of the Commonwealth when the literal requirements of the long-arm statute have been satisfied"). Thus, the court finds the requirements of the Massachusetts long-arm statute to have been met in this case.

The next task is to determine whether the plaintiff has met his burden of establishing that requiring the defendants to litigate the case in Massachusetts comports with the strictures of the Constitution. The First Circuit has explained that compliance with the federal constitutional standard involves a somewhat more extensive showing than the long-arm statute. "That showing has three aspects: First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable." *Barrett v. Lombardi*, 239 F.3d 23, 26 (1st Cir.2001) (citing *United Electrical, Radio & Machine Workers of America*, 960 F.2d at 1089).[2]

The first aspect of the Fourteenth Amendment inquiry is commonly referred to as the "relatedness test." At first blush, the constitutional standard seems congruous with the state long-arm statute's requirement that the plaintiff's claims "arise from" the defendant's in state transactions. Indeed, the First Circuit once recognized that the two requirements correspond. *See Foster–Miller*, 46 F.3d at 144 n. 3 (noting " 'arising from' requirement corresponds to relatedness"). It would be reasonable to assume, therefore, that the First Circuit operates under the "but for" standard for relatedness

---

**2.** The tripartite analysis stated herein is associated with the court's exercise of specific personal jurisdiction over the defendant. *See Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir.1999). Of course, a defendant who has maintained "a continuous and systematic linkage with the forum state brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Id.* While the plaintiff mentions in passing that there is "evidence of continuous and consistent contact" between the defendants and Massachusetts, he does not press the argument that general jurisdiction exists in this case. Indeed, at the hearing on this matter on April 30, 2001, the plaintiff agreed that the strenuous requirements for the exercise of general jurisdiction are not met in this case. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

adopted by the SJC in *Tatro*. However, the First Circuit has since retreated from the comparison, and has held that "the *proximate cause* standard better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 715 (1st Cir.1996) (emphasis added). The proximate cause standard requires that the defendant's in-state contacts be the foreseeable cause of the plaintiff's injuries. *See id.* The court tempered its pronouncement by noting that the proximate cause test for relatedness "is not as rigid" as the familiar tort concept. *Id.*

The decision to adopt the proximate cause standard for the determination of relatedness is significant because the defendants contend that a *contractual* transaction in Massachusetts cannot be the proximate cause of a *tort* in Alaska. The defendants' argument is unavailing. The First Circuit has expressly stated that it sees "no reason why, in the context of a relationship between a contractual or business association and a subsequent tort, the absence of proximate cause *per se* should always render the exercise of personal jurisdiction unconstitutional." *Id.* The First Circuit's "relaxed" view of proximate cause recognizes that the key element of relatedness under the Fourteenth Amendment is foreseeability. For instance, in *Nowak*, the court held that a foreign hotel's solicitation of a Massachusetts company's employees was related to the wrongful death tort resulting from a child's death in the hotel swimming pool. The court adopted the district court's reasoning that the solicitation of business by the foreign hotel "set in motion a chain of reasonably foreseeable events resulting in [the victim's] death." *Id.* at 716. While the court acknowledged that the solicitation of business and the ultimate tort were *not* proximately related,

in the traditional sense, the court nevertheless found that the nexus did "represent a meaningful link between [the defendant's] contract and the harm suffered." *Id.* The court concluded that "[w]hen a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result.... If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage ." *Id.* at 715.

The defendants' recruitment of Massachusetts fishermen is enough to make the harm allegedly suffered here foreseeable. Given the well-known risks of the fishing industry, it cannot be gainsaid that it is foreseeable that a fisherman recruited in Massachusetts might be injured aboard a vessel off the coast of Alaska. Although the defendants are correct to note that the plaintiff bears the burden of proving that the defendants recruited the plaintiff through their Massachusetts contacts, and not just recruited Massachusetts fishermen generally, the plaintiff has met that burden. *See* Pike Aff. ¶¶ 6–15. Thus, the plaintiff's proffer is enough to establish for present purposes that Mark Kandianis' efforts to recruit fishermen, including the plaintiff, from Eastern Fisheries in New Bedford was the proximate cause of the plaintiff's injuries.

The second prong of the Fourteenth Amendment analysis is whether the defendants' in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protec-

tions of that state's laws and making the defendants' involuntary presence before the state's courts foreseeable. "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." *See Nowak*, 94 F.3d at 716 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir.1995)). This means that the defendants' contacts with the forum must be voluntary and such that the defendants should reasonably anticipate being haled into court in Massachusetts. *Id.*

Based on the discussion above, it is clear that the defendants' contacts with Massachusetts were deliberate and not random. Here, the plaintiff's proffer is that the defendants actively sought employees from Massachusetts over a period spanning nearly twenty years. These contacts, designed to bring Massachusetts residents to Alaska, rendered foreseeable the possibility of being haled into a Massachusetts court.

The third and final prong of the Fourteenth Amendment analysis is whether the exercise of jurisdiction must, in light of the so-called gestalt factors, be reasonable. The gestalt factors are as follows:

> (1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*See Nowak*, 94 F.3d at 717 (citing *United Electrical, Radio & Machine Workers of America*, 960 F.2d at 1088). "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." *Id.* There is little doubt that

the factors tip decidedly in the plaintiff's favor.

First, it would be undoubtedly burdensome for Provider, Inc. to defend itself in Massachusetts. However, it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction. Therefore, the defendant must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Id.* at 718 (citation omitted). The defendants have not proffered any reason meeting that standard. As to the second of the gestalt factors, it is clear that Massachusetts has a significant interest in ensuring its residents are not injured by negligence. The defendants have not presented any persuasive argument to the contrary. Third, the plaintiff's interest in convenient and effective relief is clearly served in Massachusetts. The plaintiff is a Massachusetts resident and this district has significant experience in admiralty cases. Fourth, the most effective resolution of the controversy is in Massachusetts because a large number of the witnesses reside here. And finally, it is not possible to discern any substantive social policies that might be implicated by this litigation.

## B. Insufficiency of Service

The defendants claim that the case should be dismissed for insufficiency of service under the Massachusetts long-arm statute. The defendants claim that because the plaintiff has not fulfilled the requirements of Fed.R.Civ.P. 4(e), which requires that service is effected "pursuant to the law of the state in which the district is located," service was insufficient. The defendants' argument is unavailing. For the reasons state herein, the plaintiff has satisfied the requirements of the long-arm statute and the Fourteenth Amendment.

## C. Improper Venue

The defendants claim that venue is improper and that the case should be transferred to the Western District of Washington under the doctrine of *forum non conveniens*. The defendants cite the transfer of venue statute, 28 U.S.C. § 1404(a). Section 1404(a) states:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

A claim of improper venue is raised by a motion to dismiss. *See* Fed.R.Civ.P. 12(b)(3). Indeed, the defendants' motion cites Fed.R.Civ.P. 12(b)(3). However, counsel for the defendants stated at the hearing on this matter on April 30, 2001 that the defendants seek to *transfer* venue pursuant to section 1404(a) or the doctrine of *forum non conveniens*. Thus, the court will treat the defendants' motion as a motion for transfer of venue, rather than a motion to dismiss.

The First Circuit has recently stated that "[s]ection 1404(a) is a codification of the doctrine of *forum non conveniens*." *Albion v. YMCA Camp Letts*, 171 F.3d 1, 2 (1st Cir.1999).[3] The decision to change venue is in the trial judge's discretion. *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000). "[T]he defendant must bear the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Nowak*, 94 F.3d at 719. The plaintiff's choice of forum will be disturbed only rarely. *See id.*

Here, notwithstanding unsupported statements of counsel that this litigation is better held elsewhere, the defendants have failed to proffer any evidence that judicial efficiency strongly favors litigating in Washington. Thus, this court sees no reason to transfer the venue of this matter.

### Conclusion

For the reasons state herein, the court orders the following.

(1) The Plaintiff's Motion for Reconsideration and Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction, dated May 7, 2001, is ALLOWED. (Docket No. 49).

(2) The Motion of Defendants F/V Provider (O.N.290638) and Provider, Inc. to dismiss under Fed.R.Civ.P. 12(b)(2) (Lack of Personal Jurisdiction), Fed. R.Civ.P. 12(b)(5) (Insufficiency of Service), or Alternatively Fed.R.Civ.P. 12(b)(3) (Improper Venue) (Docket No. 35) is DENIED.

(3) The plaintiff's motion for additional discovery is denied as moot, since the discovery was directed to matters pertaining to the personal jurisdiction issues resolved herein.

So Ordered.

---

**3.** The view that section 1404(a) is the same as the doctrine of *forum non conveniens* is not without controversy. Traditionally, the application of the judicial doctrine of *forum non conveniens* resulted in a final judgment dismissing the action; *see Nowak*, 94 F.3d at 719, whereas a transfer order under § 1404(a) does not end the case but preserves it as against the running of the statute of limitations and for all other purposes. For purposes of this motion, the distinction is not important.