Uraseal, Inc. v. Electric Motion Co.  CV-95-517-SD  05/09/96

UNITED STATES DISTRICT COURT FOR THE

                        DISTRICT OF NEW HAMPSHIRE


<u>Uraseal, Inc.</u>


     v.                                    Civil No. 95-517-SD


<u>Electric Motion Company, Inc.</u>



                           <u>O R D E R</u>


     In this civil action, plaintiff Uraseal, Inc., a New
Hampshire corporation, asserts claims under the patent laws for
injunctive relief and damages against defendant Electric Motion
Company, Inc. (EMC), a Connecticut corporation.

     Presently before the court are (1) defendant's motion to
dismiss for, inter alia, lack of personal jurisdiction; (2)
defendant's motion for protective order; and (3) defendant's
motion for expedited consideration of said motion for protective
order.  Plaintiff has objected to the jurisdiction-based motion
to dismiss, and defendant has filed a reply thereto.  Plaintiff's
objections to the other motions are not due until May 16, 1996,
and as of the date of this order have not yet been filed.

## Background

Uraseal is a corporation organized under the laws of New Hampshire and having its principal place of business in Dover, New Hampshire. Complaint ¶ 1. EMC is a corporation organized under the laws of Connecticut and having its principal place of business in Winsted, Connecticut. Id. ¶ 2.

Plaintiff's claims herein arise from defendant's alleged infringement of United States Letters Patent No. 4,842,530 (the '530 patent), id. ¶ 5, which patent issued on June 27, 1989, and all right, title, and interest thereto has been subsequently assigned to Uraseal, id. ¶ 6. Plaintiff alleges that "EMC has been and still is infringing the '530 Patent by making, using and selling devices made in accordance with and embodying the invention of the 1530 [sic] Patent, without license, and in violation of URASEAL's rights." Id. ¶ 7.

In addition to the claim of direct infringement, Uraseal asserts a claim for contributory infringement of the '530 patent and further maintains the EMC's conduct constitutes active inducement of infringement. Id. ¶¶ 10, 14. Such allegations arise from EMC's sale of certain "articles used by their purchasers to infringe [the] '530 Patent," id. ¶ 11, as well as its active and knowing assistance in the "direct infringement of [the] '530 Patent by third parties," id. ¶ 15.

2

## Discussion

### 1. Personal Jurisdiction Standard

"Personal jurisdiction implicates the power of a court over a defendant." Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 143 (1st Cir. 1995). "In a federal court, both its source and its outer limits are defined exclusively by the Constitution." Id.

"When a court's jurisdiction is contested, the plaintiff bears the burden of proving that jurisdiction lies in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). Where, as here, there has been no evidentiary hearing, a plaintiff is only required to make a prima facie showing of personal jurisdiction, submitting "evidence that, if credited, is enough to support findings of all facts," Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), "required to satisfy 'both the forum's long-arm statute and the due process clause of the Constitution,'" id. (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990)). This "prima facie showing of personal jurisdiction must be based on evidence of specific facts set forth in the record." Id. (citing Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 9 (1st Cir. 1986)).

3

When reviewing the record before it, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Kopf v. Chloride Power Elecs., Inc., 882 F. Supp. 1183, 1192 (D.N.H. 1995) (quoting Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987)) (quotation marks and citation omitted). The court will, however, construe plaintiff's written allegations of jurisdictional facts in her favor. Id. (citing Kowalski, supra, 787 F.2d at 9) (citation omitted).

"[T]he extent of the required jurisdictional showing by a plaintiff depends upon whether the litigant is asserting jurisdiction over a defendant under a theory of 'general' or 'specific' jurisdiction." Sawtelle, supra, 70 F.3d at 1387 n.3 (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 n.3 (1st Cir. 1994)).[1] Specific jurisdiction turns on a "plaintiff's ability to satisfy two cornerstone conditions: 'first, that the

_____

[1]The court elects to narrow "the lens of judicial inquiry . . . to focus on specific jurisdiction," Foster-Miller, supra, 46 F.3d at 144, due to the allegations of forum-based infringement contained in the amended complaint, while at the same time noting that general personal jurisdiction is ordinarily invoked "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state," id. (citing United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

forum in which the federal district court sits has a long-arm statute that purports to grant jurisdiction over the defendant; and second, that the exercise of jurisdiction pursuant to that statute comports with the strictures of the constitution.'" Foster-Miller, supra, 46 F.3d at 144 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994), cert. denied sub nom., Yari v. Pritzker, ___ U.S. ___, 115 S. Ct. 1959 (1995)).

## 2. Application of the Principles

### a. New Hampshire Long-Arm Statute

The court's jurisdiction over this controversy arises in the context of the federal questions asserted herein; namely, defendant's alleged violations of the patent laws.[2]  As distinguished from personal jurisdiction in the context of diversity jurisdiction, which is controlled by the Due Process Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment controls when a court's jurisdiction is founded upon a federal question.  United Elec. Workers, supra note 2, 960 F.2d at 1085 (citing 28 U.S.C. § 1332; Lorelei Corp. v. County of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991)) (other citation omitted).

_____

[2]In this regard, defendant's argument that the court is without subject matter jurisdiction over the instant controversy is clearly without merit and is accordingly rejected.

Regardless of the controlling Amendment, the basis for service of process to a particular court must "be grounded within a federal statute or Civil Rule," as "process constitutes the vehicle by which the court obtains jurisdiction." Id. (citing Lorelei, supra, 940 F.2d at 719 n.1) (other citations omitted). Absent federal authorization for service, the court must turn to state law for authority to exercise jurisdiction over an out-of-state corporation. See Rules 4(e) and 4(k)(1), Fed. R. Civ. P.; Akro Corp. v. Luker, 45 F.3d 1541, 1544 (Fed. Cir.) (when federal statute does not provide for service of process, court must look to forum state's long-arm statute), cert. denied sub nom., Luker v. Akro Corp., ___ U.S. ___, 115 S. Ct. 2277 (1995).

Recent caselaw has confirmed this court's previous determination that New Hampshire Revised Statutes Annotated (RSA) 293-A:15.10 is the New Hampshire long-arm statute governing unregistered foreign corporations. Sawtelle, supra, 70 F.3d at 1388 (citing McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994)).[3] RSA 293-A:15.10 "includes no restriction

_____

[3]Under RSA 293-A:15.10,

> (b) A foreign corporation may be served by registered or certified mail, return receipt requested, addressed to the secretary of the foreign corporation at its principal office shown in its application for a certificate of authority or in its most recent annual report if the foreign corporation:

upon the scope of jurisdiction available under state law and thus authorizes jurisdiction over such entities to the full extent permitted by the federal Constitution." Id. Accordingly, "the two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met." Id.

b. Constitutional Due Process Requirements

A court may exert specific jurisdiction when a plaintiff shows that "minimum contacts" exist between the defendant and the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The First Circuit[4] has found that the minimum

_____

> (1) has no registered agent or its registered agent cannot with reasonable diligence be served;
> (2) has withdrawn from transacting business in this state under RSA 293-A:15.20; or
> (3) has had its certificate of authority revoked under RSA 293-A:15.31.
> . . . .
> (d) This section does not prescribe the only means, or necessarily the required means, of serving a foreign corporation.

RSA 293-A:15.10(b), (d) (Supp. 1994).

[4]Although the Federal Circuit has indicated its preference to follow its own law on personal jurisdiction where a conflict exists with the law of another circuit, see Akro Corp., supra, 45 F.3d at 1593, the law of the First Circuit remains in harmony with Federal Circuit personal jurisdiction jurisprudence, to the extent it exists, and thus this court utilizes First Circuit caselaw in aid of the present jurisdictional analysis.

7

contacts analysis "implicates three distinct components, namely, relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness." Foster-Miller, supra, 46 F.3d at 144 (citing United Elec. Workers, supra note 2, 960 F.2d at 1089); accord Ticketmaster, supra, 26 F.3d at 206.

As to "relatedness", the court's first consideration is whether plaintiff's claims arise out of, or relate to, defendant's New Hampshire activities. See Ticketmaster, supra, 26 F.3d at 206. This "requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Id. "The relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." Sawtelle, supra, 70 F.3d at 1389 (emphasis added) (citing Fournier v. Best Western Treasure Island Resort, 962 F.2d 126, 127 (1st Cir. 1992)). That being noted, "the relatedness test is, relatively speaking, a flexible, relaxed standard," Pritzker, supra, 42 F.2d at 61, which "authorizes the court to take into account the strength (or weakness) of the plaintiff's relatedness showing in passing upon the fundamental fairness of allowing the suit to proceed," Ticketmaster, supra, 26 F.3d at 207.

8

This litigation is founded upon, inter alia, defendant's alleged infringement of the '530 patent, which patent covers an invention for what is colloquially known in the telecommunications industry as a "floating bond". Affidavit of Michael R. Devaney ¶ 2 (attached to Plaintiff's Objection as Exhibit 1). Uraseal's floating bond is intended

> to provide an electrical and mechanical connection between a terminal ground and a cable that has a conductive sheath. The product was designed for a standard outdoor residential telephone cable or buried service wire, which consists of a number of electrical wires individually insulated and bound together by a protective armored metallic sheath. Uraseal Floating Bonds (and their imitators) enable telephone company service personnel to easily connect the protective metallic sheath of a telephone cable or buried service wire to an electrical ground in a buried service wire pedestal or a standard telephone network interface box.

Id. ¶ 3.

EMC is alleged to both manufacture and supply "bonding and grounding products, including electrical floating bond assemblies, to telecommunications service providers in the telecommunications industry." Id. ¶ 4. One of EMC's floating bond assemblies, denominated by their product number EM3956-10S, is alleged to be identical in its functionality to the Uraseal floating bond. Affidavit of Don H. Day ¶¶ 4-5 (attached to Plaintiff's Objection as Exhibit 2).

It is further alleged that the "EMC Floating Bond is stocked

9

and used by NYNEX for its telephone operations in New Hampshire."
Id. ¶ 5. This allegation is supported by, inter alia, the personal observation of Donald Day, a consultant to plaintiff, in January 1995 of "a supply of several hundred EMC Floating Bonds (with accompanying EMC documentation) that were stocked by NYNEX" in its Greenland, New Hampshire, facility. Id. ¶ 10.

On the basis of such representations, the court finds that a sufficient nexus exists between plaintiff's patent infringement claims and defendant's alleged forum-based conduct.

Insofar as "[t]he function of the purposeful availment requirement is to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state," Sawtelle, supra, 70 F.3d at 1391 (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)), "the cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability," id. (citing Ticketmaster, supra, 26 F.3d at 207). As such, the jurisdictional inquiry is not merely an arithmetic endeavor, but rather one of weight and merit. Pritzker, supra, 42 F.3d at 61.

The Supreme Court has declared that an out-of-state defendant should be "forewarned" that he could be subject to suit in a forum state "if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation

10

results from the alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (citing Keeton, supra, 465 U.S. at 774; Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

"[K]nowledge that the major impact of the injury would be felt in the forum State constitutes a purposeful contact or substantial connection whereby the intentional tortfeasor could reasonably expect to be haled into the forum State's courts to defend [its] actions"  Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989) (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)), cert. denied sub nom., McNell v. Hugel, 494 U.S. 1079 (1990).  Moreover, "'[d]amage to intellectual property rights (infringement of a patent, trademark or copyright) by definition takes place where the owner suffers the damage.'"  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1388 (8th Cir. 1991) (quoting Acrison, Inc. v. Control & Metering Ltd., 730 F. Supp. 1445, 1448 (N.D. Ill. 1990)) (emphasis in Acrison).

The evidence before the court demonstrates that Mr. Devaney, president of Uraseal, personally expressed concern about possible infringement of the '530 patent by EMC's floating bond to Mr. Auclair, president of EMC.  Devaney Affidavit ¶ 7.  Moreover, in December 1994 Mr. Auclair visited Uraseal's New Hampshire

11

facility in an effort "to persuade [Devaney] that the EMC floating bond does not infringe the '530 Patent." Id. ¶ 9. In light of the foregoing, coupled with the allegation that defendant marketed a product in the forum that allegedly infringes upon plaintiff's '530 patent, the court finds and rules that plaintiff has sufficiently demonstrated, at this prima facie stage, sufficient "purposeful availment" of the forum by defendant so as to render its forum-based contacts jurisdictionally meaningful. That Uraseal would seek the present forum to litigate the infringement issue cannot be gainsaid, and by like token haling EMC into this New Hampshire forum to respond to such claims should hardly come as a matter of "unfair surprise" to defendant.

In spite of plaintiff's adequate demonstration as to both the "relatedness" and "purposeful availment" prongs of the jurisdictional construct, the court will finally examine if its jurisdiction over defendant comports with the notions of "fair play and substantial justice" that have come to define what is, jurisdictionally speaking, "reasonable".

The First Circuit has assessed "that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster, supra, 26 F.3d at 210. The Supreme Court has

12

identified five considerations, termed the "gestalt factors", that courts must consider when considering the fairness of subjecting nonresidents to the authority of a foreign tribunal:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Sawtelle, supra, 70 F.3d at 1394 (citing Burger King Corp., supra, 471 U.S. at 477).

Recognizing that "defending in a foreign jurisdiction almost always presents some measure of inconvenience," id. at 1395 (citing Pritzker, supra, 42 F.3d at 64), the First Circuit has determined that "this factor becomes meaningful only where a party can demonstrate 'a special or unusual burden.'" Id. Defendant has not claimed or demonstrated any such burden.

"A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp., supra, 471 U.S. at 473 (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)) (other citation omitted). Further, plaintiff's residence is not "completely irrelevant to the jurisdictional inquiry." Keeton, supra, 465 U.S. at 780. The court finds this factor to weigh in favor of retaining jurisdiction.

13

The court "must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Ticketmaster, supra, 26 F.3d at 211 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)). Thus, the court finds that plaintiff's interest in obtaining convenient relief in its home state weighs in favor of exercising jurisdiction.

The court next evaluates the judicial system's interest in obtaining the most effective resolution of the controversy. "[T]he judicial system's interest in obtaining the most efficacious resolution of the controversy . . . counsels against bifurcation of the dispute among several different jurisdictions." Pritzker, supra, 42 F.3d at 64. Plaintiff brought this action against the defendant in October 1995. Defendant, some four weeks later, brought a declaratory judgment action for patent invalidity, unenforceability, and noninfringement against Uraseal in its "home" state of Connecticut. The court finds and rules that Uraseal's first-filed suit has priority over EMC's Connecticut litigation, and thus cuts in favor of jurisdiction in this federal forum.

The final "gestalt" factor requires the court to "consider the common interests of all sovereigns in promoting substantive social policies." Sawtelle, supra, 70 F.3d at 1395. The infringement of trademarks, copyrights, and other indicia of intellectual property, regardless of whether the actor is geographically located within or without the forum, is said to

14

constitute "a tortious act within the state when injury occurs in New Hampshire . . . ." VDI Technologies v. Price, 781 F. Supp. 85, 89 (D.N.H. 1991). Uraseal, as holder of the patent at issue and a New Hampshire domiciliary, has, at this juncture, satisfied the court that it has suffered injury in New Hampshire. See Concord Labs, Inc. v. Ballard Medical Prods., 701 F. Supp. 272, 275 (D.N.H. 1988). New Hampshire's "significant interest in affording injured New Hampshire plaintiffs a forum in which to litigate the question of liability for their injuries," Phelps v. Kingston, 130 N.H. 166, 175, 536 A.2d 740, 745 (1987), in the view of the court, outweighs any interest Connecticut may have in policing corporations organized and operating under its laws. Thus, New Hampshire's substantive social policy of injury compensation trumps Connecticut's policy of promoting sound competition among corporations, and the final gestalt factor tips in plaintiff's direction.

Plaintiff, having demonstrated that (1) a relatedness between defendant's contacts with New Hampshire and its cause of action presently exists; (2) defendant has purposefully availed itself of the benefits and protections afforded by this state; and (3) consideration of the gestalt factors does not contradict the determination of the foregoing, has sustained its burden in opposing defendant's motion. E.g., Keeton, supra, 465 U.S. at 780 (in order to exercise in personam jurisdiction over an out-

15

of-state defendant, there must exist a logical nexus between "the defendant, the forum, and the litigation").  Accordingly, such motion must be and it is herewith denied.[5]

3.  Uraseal's Written Discovery

Uraseal served written discovery on EMC on April 12, 1996, which pursuant to the Federal Rules of Civil Procedure require EMC's response thereto by May 15, 1996.  Given the pendency of the jurisdiction motion, EMC now moves for a protective order and expedited consideration of same.

The court herewith grants the motion for expedited consideration.  Since the court has retained jurisdiction over this litigation, it further grants defendant's motion for protective order and herewith orders EMC to file its responses to Uraseal's April 12, 1996, written discovery by the close of business on Monday, June 10, 1996.

_____

[5]The court similarly finds no merit in defendant's alternative argument to transfer this matter to the District of Connecticut.  Such action would merely serve the impermissible purpose of shifting the inconvenience from EMC to Uraseal without bestowing any palpable benefit on the administration of justice. Defendant's venue argument is also rejected because the court herein found jurisdiction.  EMC is thus deemed a "resident" of the forum.  See 28 U.S.C. §§ 1391(c), 1400(b); VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1583 (Fed. Cir. 1990) ("venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced"), cert. denied sub nom., Johnson Gas Appliance Co. v. VE Holding Corp., 499 U.S. 922 (1991).

16

## Conclusion

For the reasons set forth herein, defendant's motion to dismiss (document 3) is denied, defendant's motion for expedited consideration (document 11) is granted, and defendant's motion for protective order (document 10) is granted, with responses to plaintiff's written discovery being due by the close of business on Monday, June 10, 1996.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

May 9, 1996

cc:  Paul C. Remus, Esq.
     Richard C. Nelson, Esq.
     Guy D. Yale, Esq.