**Albert B. COOK, Plaintiff,**

v.

**John McLAUGHLIN, Leslie Clements, and the State of Connecticut, Defendants.**

**Civil Action No. 95–40103–NMG.**

United States District Court, D. Massachusetts.

Feb. 29, 1996.

Albert B. Cook, pro se.

Heather Wilson, William J. Prensky, Hartford, CT, for defendants.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff, Albert Cook ("Cook"), a resident of Sturbridge, Massachusetts, filed a complaint in the above-entitled matter on June 1, 1995 against the State of Connecticut and two of its employees. Pending before this Court are motions by the defendants: 1) to dismiss plaintiff's complaint, pursuant to

Fed.R.Civ.P. 12(b)(1), (2), (5) and (6), and 2) to strike plaintiff's Opposition to defendants' motion to dismiss. For the reasons stated herein, both motions will be allowed.

## I. FACTUAL BACKGROUND

■ When considering a motion to dismiss, this Court accepts as true the allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Carreiro v. Rhodes Gill and Co., Ltd.,* 68 F.3d 1443, 1446 (1st Cir.1995). Plaintiff's complaint asserts the following factual allegations:

1. At all relevant times, plaintiff was a resident of Massachusetts and president of Products Design and Manufacturing Corporation ("Products Design"), a Connecticut corporation. Products Design has a manufacturing facility in Newington, Connecticut.

2. The defendants named by plaintiff in his complaint include the State of Connecticut and two of its employees. Defendant John McLaughlin ("McLaughlin") is a Tax Collection Supervisor for the Connecticut Department of Revenue Services ("DRS") and defendant Leslie Clements ("Clements") is a Tax Enforcement Agent at DRS.

3. In January, 1993, Clements "began harassing" plaintiff by telephoning him and his attorney, in an effort to collect state taxes owed by Products Design. Clements threatened to arrest plaintiff if he ever entered Connecticut.

4. On June 10, 1993, while Cook was visiting the Newington facility, McLaughlin instructed Clements to arrest plaintiff and Clements did so. Plaintiff was fingerprinted, photographed, and held in a jail cell in Hartford for four hours. Plaintiff was not released from custody until he agreed to post a bond of $9,557.54, the amount in back taxes the company allegedly owed to the State of Connecticut.

Plaintiff claims to have suffered "loss of income, loss of sleep and loss of energy" as a result of the improper arrest by the defen-

dants, in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution (Count I). Count II of Cook's Complaint asserts a claim against defendants pursuant to 42 U.S.C. § 1983. Plaintiff seeks monetary damages (including punitive damages), costs and attorneys fees, as well as an "Order [to the] Defendants to expunge all references [to] Plaintiff's arrest from their records." [1]

## II. LEGAL ANALYSIS

### A. *Defendants' Motion to Strike*

■ The defendants filed their motion to dismiss on August 21, 1995, but plaintiff did not file his Opposition (along with a supporting affidavit) to that motion until October 24, 1995, 64 days later. Moreover, plaintiff neither requested permission from this Court for an extension of time in which to file his Opposition nor proffered an explanation for the tardiness of his filing. Local Rule 7.1(B)(2) requires a party to file its opposition to a motion within 14 days after service of the motion and, accordingly, plaintiff's Opposition is untimely and will be stricken. *See Florida Realty Trust v. Federal Deposit Insurance Corporation,* 871 F.Supp. 85, 89 n. 3 (D.Mass.1994).

### B. *Defendants' Motion to Dismiss Claims Against the State of Connecticut*

■ The Eleventh Amendment to the United States Constitution provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Eleventh Amendment generally is recognized as a bar to suits against a State, its departments and agencies unless the State has consented to suit. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1987) (per curiam); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614

---

1. The alleged unlawful arrest upon which plaintiff's claims are based was made pursuant to a warrant which was supported by an affidavit by Clements. On August 30, 1993, the Connecticut Superior Court allowed Cook's motion to dismiss the information filed against him for lack of jurisdiction because, "as president of the corporation, [he could not personally] be in violation of [Connecticut] General Statutes § 12–737(a) for failure to pay over withholding taxes."

(1976). Indeed, "[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, ... a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) (citing *Pugh*); *see also Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993).

In the case at bar, therefore, the State of Connecticut is insulated from suit brought by a citizen of Massachusetts in federal court unless Connecticut either consents to suit or waives the immunity provided by the Eleventh Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98–100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984).[2] Because Connecticut has not consented to suit in the case at bar, this Court lacks jurisdiction over plaintiff's claims against the State and those claims must, therefore, be dismissed. *See* Fed.R.Civ.P. 12(b)(1), (6). The Eleventh Amendment similarly bars plaintiff's § 1983 claim against Connecticut because Congress, in enacting that statute, did not intend to abrogate the immunity afforded by that Amendment.[3] *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

### C. Motion to Dismiss Claims against the Individual Defendants

The Complaint fails to indicate whether plaintiff intended to bring claims against the individual defendants, McLaughlin and Clements, in their official capacities, personally, or both. For the reasons set forth below, however, plaintiff's claims against the individual defendants warrant dismissal regardless of the answer to that question.

■ To the extent that plaintiff brings his suit against McLaughlin and Clements in their official capacities for the alleged violations of the plaintiff's civil rights pursuant to § 1983 and violations of the Fourth and Fourteenth Amendments, the Eleventh Amendment again poses an insurmountable bar. Suits against state officials in their official capacity should be treated as suits against the State "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official...." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Thus, absent waiver, neither the State nor its agencies nor employees acting in their official capacities are subject to suit in federal court, *see Metcalf & Eddy, Inc.*, 506 U.S. at 144–45, 113 S.Ct. at 687–88, because such suits against state officials for money damages are barred by the Eleventh Amendment. *See Ford Motor Co. v. Dep't. of the Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants"); *see also Will*, 491 U.S. at 71, 109 S.Ct. at 2312 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

■ The Eleventh Amendment does not bar suits against state officers sued in their personal capacities, however. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165–68, 105 S.Ct. 3099, 3104–07, 87 L.Ed.2d 114 (1985) (discussing distinction between official capacity and personal capacity suits). Even if plaintiff's Complaint is viewed as asserting causes of action against McLaughlin and Clements in their personal capacities, however, dismissal of Cook's claims against them is required because this Court lacks personal jurisdiction over the defendants, to which issue this Court now turns.

---

2. A State may also be sued in federal court if Congress, pursuant to its authority under the Fourteenth Amendment, expressly overrides the State's immunity. *Pennhurst State School & Hosp.*, 465 U.S. at 99, 104 S.Ct. at 907.

3. Apart from the Eleventh Amendment immunity from suit, plaintiff's § 1983 claim against the State is barred by the Supreme Court's holding in *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) that States are not "persons" within the meaning of that statute.

### D. *Lack of Personal Jurisdiction*

 When a District Court's subject matter jurisdiction rests wholly or in part on the existence of a federal question, the constitutional limits of the Court's personal jurisdiction are drawn in the first instance by reference to the due process clause of the Fifth Amendment, not the Fourteenth Amendment. *United Elec. Workers v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1085 (1st Cir.1992); *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir.1991) (per curiam). In such cases, the Constitution requires only that the defendant have the requisite "minimum contacts" with the United States as a whole, rather than with the particular forum state. *United Elec. Workers*, 960 F.2d at 1085.

 Congress has, nevertheless, imposed an additional limitation on a District Court's personal jurisdiction by the Civil Rules governing the territorial limits of effective service. Indeed, Fed.R.Civ.P. 4(k)(1)(A) provides that when service is made outside the boundaries of the state in which the District Court sits, such service is effective to establish personal jurisdiction over the defendant only where the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in [that] state."[4] Accordingly, the critical inquiry in the instant case focuses on Massachusetts law governing personal jurisdiction, as found in that State's long-arm statute. *United Elec. Workers*, 960 F.2d at 1086. The consideration of state law, in turn, implicates the familiar "minimum contacts" doctrine because state law is subject to the constraints of the Fourteenth Amendment. *See Lorelei Corp.*, 940 F.2d at 720.

A straightforward application of the foregoing analysis to the case at bar leads to the conclusion that plaintiff's Complaint satisfies neither the statutory nor the constitutional prerequisites for personal jurisdiction. The Massachusetts long-arm statute, Mass.Gen.L.

c. 223A, § 3, provides that a state court may exercise jurisdiction over a person:

> who acts directly or by an agent, as to a cause of action ... arising from the person's (a) transacting any business in this commonwealth; ... (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; ....

*Id.* A review of the factual allegations made by plaintiff in his Complaint, particularly those surrounding the alleged illegal arrest and imprisonment upon which Cook's claims are premised, leads this Court to conclude that the Massachusetts long-arm statute does not confer personal jurisdiction over any of the three defendants in a Massachusetts court. All acts alleged in the Complaint appear to have transpired within the State of Connecticut, and there is no allegation that either the State or the individual defendants performed any act within the District of Massachusetts. Nor is there any allegation that any of the defendants "regularly does or solicits business, or engages in any other persistent course of conduct" in Massachusetts.

 Likewise, there is no need to dwell long on the constitutional aspect of the personal jurisdiction inquiry. The "minimum contacts" doctrine requires that a nonresident defendant have sufficient contacts with the forum state such that subjecting the defendant to the forum's jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Those contacts must be the result of an act by the defendant by which the defendant "purposefully avails

---

**4.** The other bases of effective service, enumerated in Fed.R.Civ.P. 4(k)(1)(B)–(D), are not relevant to the case at bar.

itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Moreover, the defendant's contacts with the forum must be sufficient for the defendant reasonably to foresee being haled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In the recent case of *Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir.1995), the First Circuit Court of Appeals discussed at length the tripartite analysis used to determine if sufficient contacts exist to exercise specific personal jurisdiction, and this Court need not repeat that analysis here.[5] Plaintiff's Complaint utterly fails to demonstrate that his claims arise out of, or relate to, defendants' in-forum activities. Indeed, as noted above, all of the acts alleged in the Complaint occurred in Connecticut, not Massachusetts. *Cf. Sawtelle*, 70 F.3d at 1389–91. Moreover, plaintiff fails to demonstrate any "purposeful availment" by the defendants of the benefits and protections of the laws of the forum state. *Cf. id.* at 1391–94. Finally, there is no need to reach the third (reasonableness) stage of the framework (i.e., the so-called "gestalt factors"), because that stage of the jurisdictional analysis is reached only if plaintiff satisfies the first two elements. *See id.* at 1394; *United Elec. Workers*, 960 F.2d at 1091 n. 11. Because this Court lacks personal jurisdiction over the defendants, plaintiff's claims will be dismissed. *See* Fed.R.Civ.P. 12(b)(2).[6]

## ORDER

For the foregoing reasons:

1) Defendants' Motion to Strike Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint is **ALLOWED,** and

**5.** In the case at bar, plaintiff's action turns on a theory of specific jurisdiction (i.e., jurisdiction which a state may assert when a claim arises directly out of forum-based activities), rather than general jurisdiction (i.e., jurisdiction which a state may assert when a claim is not directly founded on the defendant's forum-based activities, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated

2) Defendants' Motion to Dismiss the Complaint is **ALLOWED.**

So ordered.

to the suit, in the forum state). *See, e.g., Donatelli v. National Hockey League*, 893 F.2d 459, 462–63 (1st Cir.1990).

**6.** In light of the foregoing, there is no need for this Court to address defendants' contention that dismissal is warranted based on Fed.R.Civ.P. 12(b)(5) (i.e., insufficient service of process upon the individual defendants).