William COX, Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF CORRECTION; Harold W. Clarke, former Commissioner of the Department of Correction, in his official and individual capacities; Luis S. Spencer, Commissioner of the Department of Correction, in his official and individual capacities; Steven J. O'Brien, Superintendent of the Old Colony Correctional Center, in his official and individual capacities; Katherine Chmiel, Deputy Commissioner of the Classification, Programs, and Reentry Division of the Department of Correction, in her official and individual capacities; and Veronica Madden, Associate Commissioner of Reentry and Reintegration of the Department of Correction, in her official and individual capacities, Defendants.

Civil Action No. 13–10379–FDS.

United States District Court, D. Massachusetts.

Signed March 12, 2014.

**40**

Rosemary C. Scapicchio, Law Office of Rosemary C. Scapicchio, Amy L. Codagnone, Boston, MA, for Plaintiff.

Veronica E. Dedosantos, Department of Correction, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

SAYLOR, District Judge.

This is a civil rights and tort action brought by a mentally disabled prisoner. Plaintiff William Cox alleges that the Massachusetts Department of Correction ("DOC") lacks a proper mental-health facility and places vulnerable, mentally ill prisoners among violent inmates, and that as a result he has suffered sexual abuse in violation of his constitutional rights.

On February 25, 2013, Cox filed a complaint against DOC; Harold W. Clarke, former Commissioner of DOC; Luis S. Spencer, Commissioner of DOC; Steven J. O'Brien, superintendent of Old Colony Correctional Center; Katherine Chmiel, Deputy Commissioner of the Classification, Programs, and Reentry Division of DOC; and Veronica Madden, Associate Commissioner of Reentry and Reintegration of DOC. The complaint asserts claims for violation of plaintiff's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; violation of his rights under Article I of the Massachusetts Declaration of Rights; and violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and preliminary and permanent injunctions requiring defendants to cease its allegedly unconstitutional and unlawful practices.

On June 12, 2013, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

### I. Background

Unless otherwise noted, the facts are presented as stated in the complaint.

#### A. Legal Background

In 1989, the Governor's Special Advisory Panel on Forensic Mental Health recommended that DOC establish a comprehensive mental-health center that could serve as an alternative to prison segregation and transfer to Bridgewater State Hospital. (Compl. ¶ 17). DOC discussed the recommendation with Prison Mental Health Service, its mental-health vendor, in 1990, but ultimately did not implement the recommendation. (Compl. ¶ 18).

---

1. Plaintiff has voluntarily dismissed his claims for negligence and negligent infliction of emotional distress.

On March 20, 2006, the Joint Mental Health and Substance Abuse Committee of the Massachusetts Legislature held an oversight hearing. The Committee heard testimony from Dr. Kenneth Appelbaum, who testified that DOC had a "dire need" for a high-security residential-treatment facility as an alternative to segregation for prisoners with mental illness, and that the number of mental-health clinicians was inadequate. It also heard from family members of prisoners who had committed suicide in segregation. The then-Superintendent of the DOC asserted at the hearing that the existing policies provided adequate protection to prisoners with mental illness. (Compl. ¶ 22).

In September 2006, DOC commissioned a suicide-prevention assessment from the National Center on Institutions and Alternatives. The resulting report, the Hayes Report, recommended that DOC develop alternative placement options for inmates suffering from mental illness who needed greater supervision than the general population. (Compl. ¶ 20).

In 2007, the Disability Law Center filed a class-action suit on behalf of Massachusetts prisoners with mental illnesses against DOC and various employees. (Compl. ¶ 22). The Disability Law Center and DOC entered into a settlement on April 12, 2012, which was approved by the District Court (Wolf, J.). At the time, the Court acknowledged that DOC had begun independent initiatives in 2007 to improve conditions for prisoners with mental illness in correction facilities. (Compl. ¶¶ 23–24, Exs. 2, 3). *See Disability Law Ctr. v. Massachusetts Dep't of Correction*, 960 F.Supp.2d 271 (D.Mass.2012).

### B. *Factual Background*

William Cox is a 53–year–old man with an intelligence quotient ("IQ") of 55 who has been diagnosed with mental retarda-

tion. (Compl. ¶ 11). He cannot read or write and cannot dial a telephone. (Compl. ¶ 16).

Cox was convicted of second-degree murder in 2007. He then entered the custody of DOC. (Compl. ¶ 12). He began serving his sentence at Massachusetts Correctional Institution ("MCI") Cedar Junction on February 6, 2007. He was later referred to Bridgewater State Hospital. He was discharged from Bridgewater on December 10, 2007, and transferred to Souza–Baranowski Correctional Center, a maximum-security prison. (Compl. ¶¶ 14–16). His medical records indicate that he had difficulty adjusting to MCI Cedar Junction because of his cognitive deficits and because he had been a target of other inmates. (Compl. ¶ 15).

Cox's incarceration records indicate that he is a particularly vulnerable inmate. For example, a DOC mental-health progress note written on February 8, 2007, states that he "appears to be at risk of being a target of stronger inmates in this environment." A Bridgewater State Hospital Discharge Summary dated December 12, 2008, notes that he was being targeted by other prisoners and instructs that he needs assistance with housing placement "given his limitations and potential for being targeted by other inmates." (Compl. ¶¶ 35–36).

Cox contends that DOC has improperly classified him to higher-security institutions. In August 2007, DOC initially classified him as a medium-security prisoner, but that classification was overridden by the Superintendent and the Commissioner changed his classification to maximum security. (Compl. ¶ 39). At classification hearings in 2008 and 2009, DOC assigned Cox additional points for a history of escape and prior institutional violence. According to the complaint, he did not, in

fact, have any recorded disciplinary reports. (Compl. ¶¶ 40–45).

On January 25, 2010, DOC recommended that Cox be transferred to a medium-security facility. (Compl. ¶ 47). However, as of one month later, on February 25, 2010, Cox had not been transferred. Instead, he was residing in the "multipurpose unit" at Old Colony Correctional Center ("OCCC") in Bridgewater, Massachusetts. (Compl. ¶ 26). That day, in Cox's cell, Keith Strickland, Barry Green, and Jesse Descavich raped him by holding his neck and arms and attempting to put a deodorant container in his anal cavity. (Compl. ¶ 27, Ex. 6). An informant notified OCCC of the incident. Cox confirmed the incident to Vanessa Martino Fleming, his mental-health worker, and IPS Sergeant Maryann Lewis. (Compl. ¶ 28, Ex. 6). DOC conducted an investigation and informed the Plymouth County District Attorney, who brought charges against Strickland, Green, and Descavich. (Compl. ¶¶ 29–31).

The complaint alleges that other inmates have mistreated Cox throughout his imprisonment. They have given him candy and other treats to manipulate him into cooperating with them. They have raped and molested him. (Compl. ¶ 32). Allegedly, this sometimes has occurred within the sight of DOC staff. (Compl. ¶ 37). As a result of these incidents, Cox has suffered extreme emotional distress. (Compl. ¶¶ 53–54).

Harold W. Clarke was the Commissioner of DOC in 2010; Luis Spencer is the current Commissioner. The Commissioner has ultimate responsibility for and control over inmates in DOC's custody, including Cox. (Compl. ¶¶ 6–7). Steven J. O'Brien is the Superintendent of OCCC and has responsibility for the care and custody of OCCC inmates, including Cox. (Compl. ¶ 8). Katherine Chmiel is the Deputy Commissioner of Classification, Programs, and Reentry Division of DOC. In that position, she is responsible for Health Services, the Division of Inmate Risk and Placement, and the Classification Division. (Compl. ¶ 9). Veronica Madden is the Associate Commissioner of Reentry and Reintegration of DOC. In that position, she supervises Inmate Health Services, including the provision of mental-health care to prisoners in segregation. (Compl. ¶ 10). Plaintiff contends that defendants, as employees and representatives of DOC, were (and are) aware of the reports and recommendations regarding inmates with mental illnesses. (Compl. ¶ 25).

## C. *Procedural History*

Cox filed a grievance on March 12, 2010, through his attorney at Prisoners' Legal Services.[2] On May 11, 2010, in an oral decision, DOC granted his request for a transfer and denied his request for monetary damages. (Compl. ¶¶ 48–49; *see* Complaint, Ex. 1 at 63–65, 69–72; Mot. Dismiss, Ex. 3). Cox appealed the partial denial. On May 29, 2010, DOC stated that it would move Cox to North County Correctional Institution in Gardner, but denied his request for compensation pending further investigation. (Compl. ¶¶ 50–52).

---

2.  The grievance states, in full:

   I was held in maximum security even thought [*sic*] I should not have been in maximum security. Even after I was classified to medium I was kept in maximum. While in the maximum unit I was sexually assaulted. I am mentally challenged and cannot read or write. I was helped in writing this grievance by [attorney]. The DOC did not keep me safe.
   (Compl., Ex. 1 at 69). Cox requests as a remedy: "Keep me safe. Monetray [*sic*] damages." (*Id.*).

On February 25, 2012, Cox filed suit in this Court.

## II. *Legal Standard*

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir.2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir.2008) (quotations and original alterations omitted).

## III. *Analysis*

Defendants have moved to dismiss the complaint on grounds of settlement and/or claim preclusion and failure to exhaust administrative remedies. Defendants have also moved to dismiss various individual counts on multiple grounds.

### A. *Settlement and Claim Preclusion*

Defendants contend that prosecution of this lawsuit is precluded by the resolution of two prior lawsuits. First, defendants contend that the settlement agreement in *Disability Law Ctr. v. Massachusetts Dep't of Correction*, 960 F.Supp.2d 271 (D.Mass.2012), bars this suit. Second, defendants contend that plaintiff's prior suit against Clarke and Carol Mici, the Assistant Deputy Commissioner of Classification, has a preclusive effect on the present suit.

The doctrine of claim preclusion, or *res judicata*, prohibits parties from contesting issues that they have had a "full and fair opportunity to litigate." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). To apply, it requires three elements: "(1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir.2010). The decisions of state courts, as well as federal courts, can have a preclusive effect. *Willhauck v. Halpin*, 953 F.2d 689, 704 (1st Cir.1991). And settlements, like actual judgments, can bar later suits. *Nottingham Partners v. Trans–Lux Corp.*, 925 F.2d 29, 31 (1st Cir.1991).

The *Disability Law Center* settlement in 2012 neither bars nor controls this suit. In that case, the Disability Law Center sued on behalf of all incarcerated individuals with serious mental illness, a class that allegedly includes Cox. The complaint alleged that the DOC's practice of placing inmates with mental illnesses in segregated confinement violated their rights under the Eighth and Fourteenth Amendments, the Rehabilitation Act, and the Americans with Disabilities Act. The final agreement, except in certain circumstances, "prohibits the placement of inmates with serious mental illness in Departmental Disciplin-

ary Units, a form of segregation, and limits the use of other forms of segregation of inmates with serious mental illness." *Disability Law Ctr.*, 960 F.Supp.2d at 277. The complaint here does not allege that Cox was placed in such a segregation unit or was otherwise segregated. Thus, the causes of action in that suit and the present suit differ, and the settlement has no preclusive effect.

The decision in *Cox v. Commissioner of Corrections*, 09–4726D (Mass. Sup.Ct. Sept. 14, 2011), likewise does not bar this suit. In 2009, Cox, who is the plaintiff here, sued two prison officials, Clarke and Mici, on two grounds. (*See* Mot. Dismiss, Ex. 1). First, he alleged that DOC's failure to promulgate the Objective Classification Manual as part of the inmate-classification regulations violated the Massachusetts Administrative Procedure Act. Second, he contended that DOC had arbitrarily and capriciously applied the Manual's criteria to him, which resulted in his alleged overclassification to a maximum-security facility. In 2011, the Superior Court, ruling on a summary judgment motion, held that the Manual did not have to be promulgated as a regulation. The court then dismissed his second argument on one or two grounds—the opinion is unclear—that he failed to exhaust his DOC remedies, and/or that he had been transferred to a medium-security facility, rendering the matter moot.[3] During the pendency of that suit, in February 2010, Cox was sexually assaulted. He did not move to amend the state-court complaint; instead, he filed a grievance with DOC and brought the present suit.

The latter state-court decision satisfies the first and second criteria for claim pre-

clusion. The ruling was a final decision on the merits, which the parties do not contest. And the parties were the same or similar. The plaintiff is the same, as is defendant Clarke, in both suits. Mici in the first suit has been replaced here with other DOC officials and the state agency itself. But there is a "close and significant relationship" between all of the defendants, all of whom are prison officials. *Airframe Sys., Inc.*, 601 F.3d at 18. *See Negron–Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 10 (1st Cir.2008) (noting that claim preclusion applied "when a government is sued first (unsuccessfully) and officers in their personal capacities sued afterwards on the same theory").

As to the third criterion, the First Circuit takes a "transactional approach" in determining whether asserted causes of action are related for claim-preclusion purposes. *Airframe Sys., Inc.*, 601 F.3d at 15. The essential question is whether "the causes of action arise out of a common nucleus of operative facts." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26, 38 (1st Cir.1998). Important factors include "whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether treating them as a unit conforms to the parties' expectations." *In re Iannochino*, 242 F.3d 36, 46 (1st Cir.2001) (internal quotations omitted). To be sure, some of the underlying facts of the cases are the same; plaintiff was in defendants' control and custody at all times, and the cases share the legal theory that plaintiff suffered harm because of defendants' overclassification. But the sexual assault and related events occurred after the state court litigation was well underway, pre-

---

**3.** The Massachusetts Appeals Court, on review, passed over the failure-to-exhaust question and affirmed the lower court's decision on the ground that the issue was moot due to Cox's reclassification. *Cox v. Comm'r of Corr.*, 83 Mass.App.Ct. 1107, 981 N.E.2d 233 (2013).

senting a different set of operative facts. The core theories differ, as well; the first suit was an action under state administrative procedure law for improper promulgation of a regulation, whereas the present suit seeks relief under federal civil rights law for alleged violations of constitutional rights. The administrative procedures for a prisoner to file a grievance after an assault and to challenge a classification are distinct. *See* 103 C.M.R. §§ 491.00, 761.00. The requirement that an inmate exhaust his administrative remedies prior to filing suit in court also weighs against a finding of preclusion; at the time of the 2011 dismissal, plaintiff's § 1983 claim based on sexual assault was not yet ripe. *See Massachusetts Sch. of Law at Andover, Inc.,* 142 F.3d at 38 (remarking that claim preclusion "will not attach if the claim asserted in the second suit could not have been asserted in the first").

Accordingly, the motion to dismiss will not be granted on the ground of settlement or claim preclusion.

## B. *Exhaustion*

Defendants next contend that plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 ... or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This limitation on the ability of prisoners to sue "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). A plaintiff's failure to exhaust administrative remedies is an affirmative defense as to which a defendant bears the burden of proof. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

The PLRA "uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion." *Woodford v. Ngo,* 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Requiring proper exhaustion in administrative proceedings "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). To that end, the PLRA requires that an inmate, prior to initiating a lawsuit in court, exhaust all "available" remedies, not just those that meet federal standards or that provide the same type of relief that the plaintiff seeks in court. *Woodford,* 548 U.S. at 85, 126 S.Ct. 2378. Requirements set by state law and regulations "define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218, 127 S.Ct. 910. Moreover, the need to comply with those administrative requirements extends to "an agency's deadlines and other critical procedural rules." *Woodford,* 548 U.S. at 90–91, 126 S.Ct. 2378.

Pursuant to Mass. Gen. Laws ch. 124, § 1(i) and (q) and ch. 127, § 38E, the Massachusetts Commissioner of Correction has issued regulations for the processing of inmate grievances. Those regulations are codified at 103 C.M.R. § 491.00 *et seq.* Under the regulations, a grievance must include, among other things, the date of the incident, the name of the current institution, the name of the institution of complaint, a brief statement of facts, the remedy being requested, and signatures of the inmate and staff recipient. *Id.* § 491.09(2). The regulations do not require the inmate to name defendants or state legal claims. *Id.* Under the regula-

tions, the grievance should be initially reviewed by the Institutional Grievance Coordinator, who must investigate the factual basis and propose a resolution or deny the grievance within ten working days of receiving it. *Id.* §§ 491.06, 491.10(1)(e). Grievance denials must be made in writing and must "inform the inmate of the right of appeal." *Id.* §§ 491.10(1)(f), (4). The inmate may appeal "within ten working days from receipt of a decision to the Superintendent." *Id.* § 491.12(1). If the Superintendent denies a grievance appeal, the regulations require that the appeal package be forwarded to the "departmental grievance coordinator," who may take any further action that the Superintendent is entitled to take in response to the original appeal. *Id.* § 491.13.

Defendants contend that plaintiff failed to exhaust his claims for violation of the ADA, negligence, negligent infliction of emotional distress, and violation of his constitutional right to due process. As noted, plaintiff dismissed the claims for negligence and negligent infliction of emotional distress, and the complaint does not allege a due-process violation. Therefore, the sole remaining inquiry is whether plaintiff properly grieved his ADA claim.[4]

"The primary purpose of a grievance system is to alert prison officials of problems, not to act as notice that particular prison officials may be sued." *Mallory v. Marshall,* 659 F.Supp.2d 231, 238 (D.Mass. 2009). Massachusetts regulations do not require that inmates list causes of action in a grievance. *See Faust v. Cabral,* 2013 WL 3933021, at *3 (D.Mass. July 30, 2013). Therefore, to determine whether the agency received sufficient notice "to investigate and consider all grounds" for the prisoner's complaint, the Court looks to see whether the "claims in the complaint are 'like or reasonably related' to the allegations in the grievance." *Id.* (internal quotations and citations omitted).

Here, plaintiff stated in his grievance that he was improperly classified and held in maximum security when he should have been in medium security, that he was sexually assaulted, that he was "mentally challenged" and could not read or write, and that DOC "did not keep [him] safe." (Compl., Ex. 1 at 69). He sought as a remedy that DOC "keep him safe" as well as monetary damages. (*Id.*). Those facts, under the circumstances, are sufficient to establish the basic underpinnings of an ADA claim in that he claimed to have a disability (mental illness), that he was in a covered entity (a state prison), and that he was denied the benefits of the facility ("safe" housing and supervision). *See* 42 U.S.C. § 12132.

Consequently, because plaintiff substantially complied with the requirements of 103 C.M.R. § 491.00, the motion to dismiss will not be granted for plaintiff's failure to exhaust remedies.

### C. *Civil Rights Claims (Counts 1 and 2)*

The complaint asserts claims under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, § 11I, alleging that defendants violated plaintiff's rights under the Eighth and Fourteenth Amendments to the Constitution.

#### 1. *State Agency Defendant*

To bring a valid claim under § 1983, a plaintiff must allege that some "person" acting under color of state law deprived him of "rights, privileges or im-

---

4. Defendants do not appear to challenge that plaintiff exhausted his administrative reme-

dies as to the § 1983 claims.

munities secured by the constitution." 42 U.S.C. § 1983. It is well-settled, however, that neither a state nor its agencies or officials are "persons" within the meaning of § 1983. *Brady v. Dill*, 24 F.Supp.2d 129, 130 (D.Mass.1998) (*citing Will v. Michigan Department of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Cook v. McLaughlin*, 917 F.Supp. 79, 82 (D.Mass.1996). The Massachusetts Department of Correction is a state agency, Mass. Gen. Laws ch. 27, § 1, and therefore is not a "person" subject to suit under § 1983. *Poirier v. Mass. Dep't of Corr.*, 558 F.3d 92, 97 & n. 6 (1st Cir.2009).

Likewise, the DOC is not considered a "person" within the meaning of the state civil rights statute, Mass. Gen. Laws ch. 12, § 11. *See Commonwealth v. ELM Medical Laboratories, Inc.*, 33 Mass.App. Ct. 71, 76–77, 596 N.E.2d 376 (1992) (holding that by enacting the state Civil Rights Act, the legislature did not intend to abolish sovereign immunity for the acts described in §§ 11H and 11I).

Accordingly, counts 1 and 2 will be dismissed as to the DOC.

## 2. *Individual Defendants*

The Eleventh Amendment permits suits under § 1983 for prospective relief against state officials sued in their official capacities, but bars retroactive monetary relief. *Ex parte Young*, 209 U.S. 123, 168, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *see Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 700–01 (1st Cir.1995). For a plaintiff to obtain monetary relief, he must sue state officials in their individual capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–03, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

There is no vicarious liability under § 1983. Supervisors will be liable "when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation." *Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir.1987) (quoting *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983)). This encompasses situations where a supervisor "formulates a policy or engages in a practice that leads to a civil rights violation committed by another," and where he has notice of the conditions likely to lead to a deprivation of constitutional rights. *Camilo–Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir.1998).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Such officials have "a duty ... to protect prisoners from violence at the hands of other prisoners." *Id.* at 833, 114 S.Ct. 1970. There are two substantive components of an Eighth Amendment suit: that the deprivation is, objectively, "sufficiently serious," and that the official was, subjectively, "deliberately indifferent" to the prisoner's mental health or safety. *Id.* at 834, 114 S.Ct. 1970.

The complaint here adequately pleads a constitutional deprivation. It alleges that plaintiff was sexually assaulted by other inmates and suffered other abuses while incarcerated, which could indicate a failure to protect on the part of prison officials. Furthermore, it provides sufficient information that "(1) the defendant[s] knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." *Calderon–Ortiz v. LaBoy–Alvarado*, 300 F.3d 60, 64 (1st Cir.2002). It alleges that plaintiff's history of mental illness was well-documented, that each of the individual defendants knew of the dangers faced by

inmates with mental illnesses, and that they failed to take appropriate steps to protect him. *Cf. id.* at 65 (1st Cir.2002) (holding that the required knowledge is not knowledge that a specific harm would occur, but instead "knowledge of facts from which the official can draw the inference that a substantial risk of serious harm exists"). That failure purportedly included both a failure to implement and enforce adequate policies and procedures and a failure to train and supervise correctional officers properly. Each individual defendant is alleged to have some official responsibility for policies, procedures, and training that led to plaintiff's injury and subjective knowledge of the danger to his safety; that is, the liability alleged is not merely supervisory. The complaint plausibly contends that these failures were a direct and proximate cause of plaintiff's physical injury. Of course, whether plaintiff can prove those claims, or produce sufficient evidence for the claim to survive summary judgment, remains to be seen.

Therefore, for the purposes of a motion to dismiss, the complaint adequately pleads a cause of action under § 1983 against the individual defendants. The question remains, however, whether the claim is nevertheless barred by the doctrine of qualified immunity.

The doctrine of qualified immunity protects public employees "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Supreme Court has articulated a two-part test for determining qualified immunity. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). *See*

*Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009). The relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

At this stage of litigation, the complaint sufficiently alleges a violation of constitutional rights. And both the Supreme Court and First Circuit have held that "deliberate indifference" to a prisoner's safety violates the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Cortes–Quinones v. Jimenez–Nettleship,* 842 F.2d 556, 561 (1st Cir.1988). Therefore, at the time of the alleged constitutional deprivation, the law was clearly established that a prison official could not be deliberately indifferent to a risk of serious physical harm to an inmate. Dismissal of the § 1983 claim at this stage is therefore unwarranted. Accordingly, the motion to dismiss count 1 as to the individual defendants will be denied.[5]

■ The Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I, provides a cause of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by "threats, intimidation, or coercion." *See Bally v. Northeastern Univ.,* 403 Mass. 713, 717, 532 N.E.2d 49 (1989). The complaint here does not allege any threats, intimidation, or coercion on the part of defendants, even generally. Accordingly, count 2 will be dismissed as to the individual defendants.

### D. *Americans with Disabilities Act Claim (Count 3)*

Title II of the ADA prohibits discrimination by public entities against persons with

5. Of course, as noted, plaintiff will be able to pursue only injunctive relief, not monetary damages, against defendants as sued in their official capacities.

disabilities. 42 U.S.C. § 12132. This prohibition applies to state prisons. *Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (holding that the ADA covers inmates in state correctional facilities). In order to state a claim, plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de Puerto Rico,* 225 F.3d 1, 5 (1st Cir.2000). Federal regulations require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

Defendants do not contend that plaintiff failed to plead a claim under the ADA. Instead, they assert only that plaintiff has failed to allege that they did not reasonably accommodate him.

The complaint alleges that defendants knew of plaintiff's disability and of his need for a modification. (Compl., Ex. 5). Specifically, it alleges that medical professionals encouraged DOC staff to place him in appropriate housing in light of his limitations and potential for being targeted by other inmates. *See Reed v. Le-Page Bakeries, Inc.,* 244 F.3d 254, 260–61 (1st Cir.2001) (discussing the sufficiency of a request for reasonable accommodation). Whether such accommodation was reasonable is a question that cannot be resolved on a motion to dismiss. *See Darian v. Univ. of Massachusetts Boston,* 980 F.Supp. 77, 88 (D.Mass.1997) (noting that reasonableness of accommodation typically is a question to be resolved at trial).

The complaint thus states a plausible claim under the ADA sufficient to survive a motion to dismiss. Accordingly, the motion to dismiss count 3 will be denied.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is GRANTED on count 1 as to defendant Department of Correction and on count 2 as to all defendants, and is otherwise DENIED.

**So Ordered.**